UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

LARRY J. CUNNINGHAM                                                                    PLAINTIFF

V.                                    Case No. 3:22-CV-00220-BBM

MARTIN J. O'MALLEY, Commissioner,
Social Security Administration[1]                                                    DEFENDANT

## ORDER

### I.    INTRODUCTION

On October 29, 2018, Plaintiff Larry J. Cunningham ("Cunningham") applied for Title II disability and disability insurance benefits. (Tr. at 15). On the same day, Cunningham applied for Title XVI supplemental security income benefits. *Id*. In both applications, he alleged that his disability began on January 1, 2017. *Id*. The applications were denied at the initial administrative level and upon reconsideration. *Id*.

On April 10, 2020, Cunningham filed an application for child's disability benefits ("CDB"), wherein he alleged disability beginning on January 1, 2015. *Id*. Cunningham was born on May 29, 1993.[2] (Tr. at 18).

A hearing on all three of Cunningham's applications was held before an Administrative Law Judge ("ALJ") on September 7, 2021. (Tr. at 15, 39–75). In a written decision dated September 23, 2021, the ALJ found that Cunningham was not disabled. (Tr.

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner O'Malley is automatically substituted as the Defendant.

[2] For CDB claims, if a claimant is 18 years or older, he must have a disability that began before age 22. (Tr. at 15-18, 329–367); Social Security Act § 202(d); 20 C.F.R. § 404.350(a)(5).

at 15–32). The Appeals Council denied Cunningham's request for review of the ALJ's decision on July 12, 2022. (Tr. at 1–6). The ALJ's decision now stands as the final decision of the Commissioner, and Cunningham has requested judicial review.

For the reasons stated below, the Court affirms the decision of the Commissioner.[3]

## II.    THE COMMISSIONER'S DECISION

At Step One of the required five-step sequential evaluation process for determining whether an individual is disabled, the ALJ found that Cunningham had not engaged in substantial gainful activity since the alleged onset date of January 1, 2015.[4] (Tr. at 19). At Step Two, the ALJ determined that Cunningham has the following severe impairments: borderline intellectual functioning, obesity, acute bilateral upper extremity and lower extremity neuropathy, anxiety, depression, post-traumatic stress disorder, and bilateral knee Baker's cyst. *Id*.

At Step Three, the ALJ determined that Cunningham's impairments did not meet or equal a listed impairment.[5] (Tr. at 19–23). Before proceeding to Step Four, the ALJ determined that Cunningham had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional restrictions: (1) no climbing of ladders, ropes,

---

[3] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

[4] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

[5] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 404.920(d), 416.925, and 416.926).

or scaffolds; (2) he should avoid concentrated exposure to excessive vibration; (3) he can make simple work-related decisions; (4) he can maintain concentration, persistence, and pace for simple tasks; (5) he can understand, carry out, and remember simple instructions and procedures; (6) he can adapt to changes in the work setting which would be simple, predictable, and easily explained; and (7) he can have only occasional and superficial interaction with co-workers, supervisors, and the public. (Tr. at 23).

At Step Four, the ALJ determined that Cunningham had no past relevant work. (Tr. at 30–32). At Step Five, the ALJ utilized the testimony of a Vocational Expert ("VE") to determine that, based on his age, education, work experience, and RFC, Cunningham was capable of performing work in the national economy. *Id*. Therefore, the ALJ concluded that Cunningham was not disabled. *Id*.

## III.   DISCUSSION

### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

### B.     Cunningham's Arguments on Appeal

Cunningham contends that the evidence supporting the ALJ's decision to deny his applications for benefits is less than substantial. Specifically, he argues that: (1) the ALJ did not properly evaluate his subjective complaints;[6] and (2) the RFC did not fully incorporate his limitations. (Doc. 11 at 8, 11). The Court will address each argument, in turn.

---

[6] Cunningham frames this issue as a failure to make credibility findings. (Doc. 11 at 8). However, Social Security Rule 16-3p removed the word "credibility" from the analysis of a plaintiff's subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. *See* Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017) ("In [eliminating reference to "credibility"], we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation."). The Eighth Circuit has found that this revision "largely changes terminology rather than the substantive analysis to be applied." *Lawrence v. Saul*, 970 F.3d 989 n.6 (8th Cir. 2020); *see also Noerper v. Saul*, 964 F.3d 738, 745 n.3 (8th Cir. 2020).

### 1.      The ALJ's Evaluation of Cunningham's Subjective Complaints

Cunningham alleges that his severe impairments cause back pain, knee pain, and neuropathy, which render him unable to work. (Tr. at 43, 49–51; Doc. 11 at 2). He also claims that he cannot perform the mental functions required in a work environment due to borderline intellectual functioning and PTSD. (Tr. at 50; Doc. 11 at 2).

According to the record, however, Cunningham did not seek specialized or aggressive treatment for his pain. He treated his conditions conservatively; his doctors prescribed only medication management.[7] (Tr. at 26–27, 639–653). Surgery was not required. And, his doctors urged exercise, including walking up to three miles a day. (Tr. at 26, 603–626). In July 2018, Cunningham told his doctor that he was walking in efforts to lose weight. (Tr. at 650).

Moreover, clinical physical examinations were grossly normal, with intact sensory and motor function and normal gait, as well as full extremity range of motion.[8] (Tr. at 26–27, 483–495, 508, 514, 592–597, 611–623, 638–639, 708). Cunningham alleged that neuropathy in his wrists and hands was disabling, but his doctors attributed that to frequent video gaming. (Tr. at 26–27, 591, 639–653). When he cut down on gaming, his condition in his hands improved.[9] *Id*. He was also able to do daily activities, like taking care of

---

[7] The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

[8] Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

[9] Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

animals, cooking, washing dishes, walking for exercise, going to church, and caring for his sister's children.[10] (Tr. at 21–22, 24–27, 59–65, 447, 520, 553). Finally, Cunningham's doctors observed that he was not always compliant with treatment as prescribed, which suggests that his impairments were not disabling.[11] (Tr. at 50–51, 530, 558, 650).

As for Cunningham's mental impairments, a consultative examiner evaluated Cunningham in February 2019 and found some slowed intellectual functioning but nothing that would rule out all work. (Tr. at 680–686). Cunningham denied mental health problems to the examiner. *Id*. The examiner said that he would be able to perform most mental work functions without significant difficulty. *Id*.

Mental status examinations typically showed that Cunningham had normal mood and affect and intact thoughts and memory. (Tr. at 27–30, 483–484, 551, 592–597, 602–611, 652–653). Although Cunningham alleges issues related to PTSD, he did not pursue regular psychiatric treatment, and, in fact, he dropped out of counseling. (Tr. at 557–574). He said at the hearing that he was not treating mental health issues. (Tr. at 50–51).

---

[10] Such daily activities undermine his claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

[11] A failure to follow a recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).

Despite these facts, Cunningham suggests that the ALJ's analysis and discussion of his subjective complaints was deficient.[12] Contrary to that assertion, the ALJ discussed and considered the nature and extent of Cunningham's pain, his lack of aggressive treatment, and his daily activities. (Tr. at 19–26). The ALJ also considered Cunningham's medications and their side effects, as well as his noncompliance with treatment. *Id.* Finally, the ALJ stated that he considered statements of third parties, which included the statements of Cunningham's mother. (Tr. at 25). When the ALJ factored in all of the above, he concluded that Cunningham's subjective complaints were not entirely consistent with the record as a whole.[13] *Id.* This was a reasonable conclusion supported by substantial evidence.

### 2.    RFC

For his second point on appeal, Cunningham asserts that the RFC did not fully incorporate all of his limitations.[14] He points to his wrist and hand neuropathy and says that the RFC should have included limitations on reaching, fingering, and handling duties.

---

[12] When evaluating a claimant's subjective complaints, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id.* (internal citations omitted).

[13] Again, Cunningham frames this argument as a failure to make credibility findings, but the Court's analysis reflects the updated standard: consistency of a claimant's allegations with other evidence. *See Noerper*, 964 F.3d at 745 n.3.

[14] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

However, hospital records reflect that the tingling and numbness in Cunningham's hands was "not constant" and "random in occurrence." (Tr. at 26, 633). At a medical visit in April of 2018, Cunningham's provider suspected carpal tunnel or overuse syndrome. (Tr. at 26, 639). To alleviate the symptoms, Cunningham's provider prescribed nightly splints and cool compresses for twenty minutes, four times a day. *Id.* At a follow-up visit, Cunningham told his provider he intermittently used splints and cool compresses. (Tr. at 26, 644).

Again, as previously discussed, Cunningham's doctor tied his wrist and hand neuropathy to video game overuse and recommended that he cut back. (Tr. at 639). When Cunningham did limit his gaming, his symptoms improved. (Tr. at 644). And, Cunningham self-reported the ability to perform daily activities involving the use of his hands, including grooming himself and making the bed. (Tr. at 24, 447). Cunningham also reported weekly activities using his hands such as cooking, cleaning house, vacuuming, doing laundry, playing cards/games, and exercising. (Tr. at 24, 447). Additionally, Cunningham testified that he sweeps, mops, and washes dishes. (Tr. at 25, 59, 63). While the ALJ noted Cunningham's impairments "could be reasonably expected to cause the alleged symptoms," the ALJ found Cunningham's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 25). In this case, the RFC sufficiently incorporated all *credible* limitations.

## IV.   CONCLUSION

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly analyzed Cunningham's subjective complaints, and the RFC

incorporated all of Cunningham's credible limitations. The finding that Cunningham was

not disabled within the meaning of the Social Security Act, therefore, must be, and hereby

is, AFFIRMED. Judgment will be entered for the Defendant.

DATED this 25th day of March, 2024.

_____
UNITED STATES MAGISTRATE JUDGE